United States District Court
District of Massachusetts

| | | |
|---|---|---|
| JON CONTE and <br> KIMBERLY CONTE, <br>     PlaintiffsS <br><br> v. <br><br> BANK OF AMERICA, N.A., AS SUCCESSOR <br> BY MERGER TO BAC HOME LOANS <br> SERVICING, LP and FEDERAL NATIONAL <br> MORTGAGE ASSOCIATION, d/b/a <br> FANNIE MAE, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION <br> No. 12-40129-TSH |

## MEMORANDUM OF DECISION ON
## DEFENDANT'S MOTION FOR TO DISMISS
### September 30, 2014

**HILLMAN, District Judge**

### Background

Plaintiffs Jon and Kimberly Conte ("Plaintiffs") have brought suit against Bank of America, NA ("BANA"), as successor by merger to BAC Home Loan Servicing, LP, ("BAC") and Federal National Mortgage Association ("Fannie Mae"), for alleged violations of law stemming from proceedings to foreclose on their home. Plaintiffs seek to forestall an eviction proceeding brought against them by BANA, and to rescind the underlying foreclosure and sale. BANA participates in the Home Affordable Modification Program ("HAMP"), a federal program designed to promote home mortgage modifications in an effort to reduce foreclosures. As part of the program, BANA allegedly entered a trial period plan agreement ("TPP") with the Plaintiffs, but failed to consumate the agreement into a permanent loan modification. Plaintiff seeks relief for Defendants' alleged breach of contract (Count I), promissory estoppel (Count II), and breach

of the covenant of good faith and fair dealing (Count III). Defendants now move to dismiss all claims dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket No. 20). For the reasons set forth below, I deny that motion.

### Facts

Plaintiffs are a husband and wife living at 41 Wilson Road, Marlborough, MA 01752 ("the Property") with their four children. They are the former mortgagors of the Property, which they purchased 2006. Plaintiffs signed a 30 year mortgage for $332,000 in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") and executed a note to the lender, Countrywide Home Loans, Inc.

Plaintiffs fell behind on their mortgage payments and applied for a loan modification. After submitting an application, they eventually secured a three-month HAMP trial loan modification agreement with BAC, which as executed on June 30, 2009. To apply for a HAMP loan modification, a borrower sends in an application containing personal financial information which the loan servicer then evaluates to determine whether the borrower is eligible for a trial plan payment agreement ("TPP"). The TPP is a uniform agreement executed by servicers and eligible buyers.

Here, the TPP requires the Plaintiffs to comply with several conditions, including sending in documentation of income and expenses as well as making timely payments. The TPP also required Plaintiffs to make three reduced monthly payments: on July 18, 2009, September 1, 2009 and October 1, 2009, and stated that if Plaintiffs did this, and all other terms of the TPP were complied with, BAC would provide Plaintiffs with a loan modification.[1]

---

[1] The first sentence of the TPP says "If I am in compliance with this [TPP] and my representations…continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement." It states in section 3, in part, "If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a

Plaintiffs signed the TPP and returned it to BAC along with the completed financial package that BAC had requested. Plaintiffs made timely payments and provided all other documentation required of them, according to the terms of the TPP. BAC failed to then provide a permanent loan modification agreement after the three months. On May 21, 2010, BAC sent correspondence to the Plaintiffs, denying them the permanent loan modification and stating failure to make trial plan payments as the reason. BAC foreclosed on May 31, 2010. On June 29, 2010, BAC notified Plaintiffs that the TPPs had, in fact, been received.

## **Discussion**

Standard of Review

To survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must evince the requisite factual detail to establish a *plausible* claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). When deciding a motion to dismiss, the court is obligated to accept all of the facts alleged in the complaint as true, however, plaintiff still carries the burden of directing the court to the appropriate substantive law that entitles it to the relief it seeks. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007); *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

1. Breach of Contract (Count I)

The essential elements of a valid contract are an offer, an acceptance, and consideration. *Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F.Supp.2d 205, 207 (D. Mass.2009). Courts have consistently found that TPPs have all the required elements of binding contracts. *See Belyea v.*

---

Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date." The representations in section 1 include the financial information sent with the initial application. Section 2 requires the borrower to make the trial payments.

*Litton Loan Servicing, LLP*, 2011 WL 2884964, *7-8 (D. Mass 2011) (finding all elements of a contract could be established with the TPP); *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, 2011 WL 2637222, *3-4 (D. Mass 2011) (finding borrowers requirements under the TPP constitute consideration); *Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342, 351-52 (D. Mass. 2011) (finding the TPP has all the elements of a valid contract, noting "it is plain that the TPPs were offers, and that [P]laintiffs' signatures and subsequent monthly payments under the terms of the TPP constituted acceptance of those offers."). Moreover, it is clear from the TPP itself that sending a copy of the proposed TPP constituted an offer; the very word offer is used to describe the proffered agreement. The TPP offered a permanent loan modification in exchange for the borrower providing financial information, making three modified payments, and obtain credit counseling if the lender required. Here, Plaintiffs accepted the offer by signing and returning it and complying with its requirements. The allegations here show an offer, acceptance, and consideration existed in this case.

Plaintiffs argue that Defendants mischaracterize the Plaintiffs' claims as grounded in a third-party breach of contract theory under HAMP. Further, Plaintiffs do not claim that BANA had duty to modify their mortgage under HAMP, but rather, that because BANA entered into negotiations to modify the mortgage, the duty then arose to conduct those negotiations in good faith. Courts in Massachusetts have determined that a trial modification, like the one the Plaintiffs had, is a contract, as it "has the appearance of a contract." *Durmic v. J.P. Morgan Chase Bank, N.A.*, 2010 WL 4825632, at *1 (D. Mass. 2010); *Bosque*, 762 F. Supp. 2d at 348 (quoting *Durmic*). As the court noted in *Durmic*, the TPP "characterizes itself as an agreement, contains signature lines for the Lender and the Borrower and includes distinctly contractual

phrases such as 'under seal' and 'time is of the essence.'" *Durmic*, 2010 WL 4825632 at *1, n. 4. Plaintiffs' TPP contained all of these elements.

As the litigation progresses, Defendants may be able to produce sufficient documentation to demonstrate that BANA complied with the terms of the agreement. However, on a motion to dismiss, the Court must accept all facts as set forth in the pleadings, taken in the light most favorable to the plaintiff. In short, at this stage, the complaint alleges sufficient factual allegations to support a plausible breach of contract claim. Accordingly, defendants' motion to dismiss the claim will be denied.

    2. <u>Promissory Estoppel</u> (Count II)

Count II sets forth a cause of action under the equitable doctrine of promissory estoppel involving the alleged loan modification between Plaintiffs and BANA. In order to establish such a claim, "under Massachusetts law, a plaintiff must allege that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *See Carroll v. Xerox Corp.*, 294 F.3d 231, 242 (1st Cir. 2002) ( internal quotations omitted). Because promissory estoppel is usually asserted as an alternative theory of recovery for a contract that is not supported by consideration, and the complaint states a plausible claim for breach of contract supported by consideration, the Court need not consider the alternative promissory estoppel theory at this juncture. *See Nickerson-Reti v. Bank of America, NA, Slip Copy, 2014 WL 2945198, at *10, (D.Mass. June 26, 2014) citing Belyea*, 2011 WL 2884964, at *9; *Durmic v. J.P. Morgan Chase Bank, NA*, 2010 WL 4825632, at*5 (D. Mass. Nov. 24, 2010). Accordingly, Defendants' motion to dismiss is denied as to the promissory estoppel claim.

### 3. Good Faith and Fair Dealing (Count III)

Count III of the complaint asserts a claim that defendants breached the implied covenant of good faith and fair dealing. More specifically, plaintiffs allege that, by refusing to speak to her about loan-modification options, defendants failed to negotiate in good faith, and failed to provide her with foreclosure alternatives as required by HAMP.

"Every contract implies good faith and fair dealing between the parties to it. The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to its fruits of the contract." *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 569-70 (2010) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991)). In order to prevail on this claim, plaintiffs must show that defendant "acted with . . . dishonest purpose or conscious wrongdoing necessary for a finding of bad faith or unfair dealing." *Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, 94 F.3d 721, 730 (1st Cir. 1996). Courts must consider whether "the challenged conduct conformed to the parties' reasonable understanding of performance obligation, as reflected in the overall spirit of the bargain," when analyzing such claims. *Speakman v. Allmerica Financial Life Ins.*, 367 F. Supp. 2d 122, 132 (D.Mass. 2005). The implied covenant does not create rights or duties not otherwise provided for in the existing contractual relationship. *See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367 (2005); Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

Plaintiffs' implied covenant claim incorporates the allegations from their breach of contract claim and is focused on how BANA allegedly mishandled the end of their trial period and failed to offer a permanent loan modification. Unlike the defendant bank in *Young v. Wells Fargo*, here there are no allegations that BANA "acted to correct its initial errors" nor that

6

Plaintiffs "eventually received [a] permanent loan modification." *See Young*, 717 F.3d 224, 238-239 (1st Cir. 2013). Indeed, the Court in *Young* noted that "there may be circumstances in which an unreasonable delay in performance or sustained inattention would give rise to an implied covenant claim under Massachusetts law." *Id.* At this stage of the proceedings, the pleadings here are sufficient to state a claim under the breach of the implied covenant of good faith and fair dealing. Accordingly, the motion to dismiss is denied as to the Count III.

## Conclusion

Defendant Bank of America, NA's Motion to Dismiss (Docket No. 20) is **_denied_** as provided in this Memorandum of Decision.

**SO ORDERED**

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE